Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6177 | **DATE** | 10/25/2001 |
| **CASE TITLE** | Thomas Mundt vs. U.S. Postal Service et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 5-1) for summary judgment is granted in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 25 2001 date docketed | 13 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | 01 OCT 25 PM 12:46 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS MUNDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 00 C 6177 |
| | ) | |
| U.S. POSTAL SERVICE and the | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

OCT 2 5 2001

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on the motion for summary judgment of the Defendant United States Postal Service ("USPS").[1] For the reasons set forth below, we grant the USPS's motion in full.

## BACKGROUND

Thomas Mundt has been employed by the USPS since 1995. On June 2, 1999 Mundt sought medical treatment for dizziness that had been afflicting him for approximately one year. Mundt's symptoms also included lightheadedness, loss of

---

[1] We note from the outset that Mundt has never named the Postmaster General, John E. Potter, as a defendant in this case as required by 29 U.S.C. § 794a and 42 U.S.C. § 2000e-16(c). Although failure to name a proper party defendant is normally a ground for outright dismissal of a case, because the United States has not directly raised this argument, we will address the merits of the summary judgment motion. Hamm v. Runyon, 51 F.3d 721, 722 (7th Cir. 1995); Teague v. United States Postal Serv., 1997 U.S. Dist. LEXIS 20864 (N.D. Ill. 1997).

balance, nausea and headaches. Mundt was referred to a neurologist, Dr. Alicia Rymut Prestegaard, who, based on an EEG, diagnosed Mundt as suffering from partial epilepsy. Dr. Prestegaard instructed Mundt not to drive until he had been seizure-free for six months. In August 1999 Mundt began receiving treatment from Dr. Young Ro, who prescribed the medicine Trileptal to control Mundt's seizures and advised Mundt not to drive until December 25.

On June 28, Mundt entered the USPS Associate Supervisor Program ("ASP"), which trains prospective supervisors in three functional areas: customer service, processing and distribution, and the bulk mail center. Mundt sought training in customer service. The customer service functional area of training includes training in street supervision, which necessarily involves driving.

On August 23, Sollie Brooks ("Brooks"), coordinator of the ASP, requested that Mundt provide medical documentation showing that he was fit to drive. In early September, after reviewing the circumstances surrounding Mundt's medical condition, the USPS notified Mundt that he was being removed from the ASP because he was "unable to perform the duties of a Customer Service Supervisor due to medical restrictions." Mundt acknowledged in a letter that he was unable to drive for a short period of time but asked to be reinstated in the Customer Service training portion of the ASP. Mundt returned to his position as an acting supervisor at the Chicago Bulk Mail Center after being removed from the ASP.

On September 27, Mundt sought an appointment with an Equal Employment Opportunity (EEO) Counselor at the USPS and complained that his removal from the ASP was discriminatory. Mundt signed the Notice of the Right to File an Individual Complaint on December 7. He received the same notice by mail on December 13; Mundt then filed his complaint, which was received by the EEO Complaints Processing Office on January 4, 2000. On January 28, the agency, pursuant to 29 C.F.R. § 1614.107(a)(2), issued a Final Agency Decision dismissing Mundt's complaint as untimely; his complaint was received 7 days past the 15 day limit within which a complaint must be filed.

In December 1999 Brooks asked Mundt if he wished to enroll in the January ASP. He was not required to re-apply for the class. Following a review of Mundt's medical records, Dr. Ranjan Patel, a physician employed by the USPS, determined that Mundt would have to be free of seizures for one year before he could be allowed to drive for the USPS. Brooks accordingly told Mundt that he could enroll in the January 2000 ASP in any area except customer service. Mundt subsequently participated in and graduated from the January 2000 ASP in the bulk mail center area. He is now a certified supervisor.

Mundt filed this suit against the USPS and the United States of America, alleging discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq. Counts I and II of his complaint allege discrimination based on Mundt's removal from the June 1999 ASP and his being prevented from entering the Customer

Service area of the January 2000 ASP, respectively. Count III alleges retaliation for Mundt's pursuit of EEO remedies. The USPS has moved for summary judgment on all three of Mundt's claims.

## LEGAL STANDARD

Summary judgment is warranted when the record, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the action under governing law. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Once the moving party has met this initial requirement, the burden shifts to the non-moving party to adduce evidence demonstrating that a genuine issue for trial remains, even as to issues upon which the non-moving party bears the burden of proof at trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986); Celotex, 477 U.S. at 325. Further, the issue must be genuine; when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact. Matsushita, 475 U.S. at 587. The non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits but must support its contentions with proper documentary evidence. Celotex, 477 U.S. at 325.

Rule 56(c), by its plain language, requires the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's claim and upon which that party will bear the burden of proof at trial. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 323. It is with these principles in mind that we turn to the merits of the USPS's motion.

## DISCUSSION

### I. Timeliness of Mundt's First EEO Complaint

In Count I, Mundt alleges discrimination based on his removal from the June 1999 ASP. The USPS first defends on a procedural ground, that Mundt's first complaint was untimely by 7 days.

Federal employees are required by law to exhaust all administrative remedies, in a timely manner, prior to filing suit under the Rehabilitation Act. 29 U.S.C. § 794a(a)(1). Federal regulations require federal employees complaining of discrimination to file a formal administrative complaint of discrimination within 15 calendar days of receiving notice of the right to do so. 29 C.F.R. § 1614.106. A late-filing employee is generally barred from bringing an action in federal court. Ester v. Principi, 250 F.3d 1068, 1071 (7th Cir. 2001). Nevertheless, this requirement is subject to the doctrines of equitable tolling, waiver and equitable estoppel. Id. A federal court faced with a suit arising out of an untimely administrative complaint does not lack

jurisdiction to hear the suit; rather, the issue is similar to one in which a plaintiff seeks to avoid having his suit barred by an applicable statute of limitations. Id.

Mundt does not argue that either equitable estoppel or waiver applies, nor could he. Equitable estoppel requires a showing that the employer took "active steps" to prevent the employee from filing a timely administrative complaint. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1991). The record here is devoid of any showing of active steps taken by the USPS to prevent Mundt from filing on time. Additionally, the Final Agency Decision dismissing Mundt's complaint did not reach the merits of his claim, which is one manner in which waiver can be demonstrated. See Ester, 250 F.3d at 1071.

Rather, Mundt asserts that the doctrine of equitable tolling salvages his untimely complaint. Equitable tolling requires the plaintiff to show that despite "all due diligence he is unable to obtain vital information bearing on the existence of his claim." Hentosh v. Herman M. Finch Univ., 167 F.3d 1170, 1174 (7th Cir. 1999) (citation omitted). It is undisputed that Mundt knew of the existence of his claim. He seeks to avail himself of the doctrine because the EEO counselor with whom he attempted to file his claim was on vacation, and he claims that he did not know that he was filing his claim in the incorrect place until she returned on January 4 and told him so. Nevertheless, Mundt admits that he signed the Notice of the Right to File an Individual Complaint. The first paragraph of that document stated that complaints must be filed at the district office in Bedford Park, Illinois.

Mundt also seems to indicate that he should not be held accountable for his late filing because he was not represented by counsel at the time he filed his first complaint on January 4. Although this claim is somewhat questionable, given that he wrote down his counsel's name as his representative on the formal complaint, it does not excuse his misreading of the form. The address of the district office is plainly given in the first paragraph, along with the instruction that the complaint must be filed at that office. Procedural rules should not be interpreted so as to excuse mistakes by those who proceed without counsel. McNeil v. United States, 508 U.S. 106, 113 (1993).

Because the undisputed facts show that Mundt filed his first EEO complaint 7 days late, and the complaint was dismissed as untimely, Mundt may not now pursue his claim in federal court. See Ester, 250 F.3d at 1071; 29 U.S.C. § 794a(a)(1). Therefore, summary judgment is appropriate as to Count I.

## II. Mundt's Discrimination Claims

To prevail in a claim of discrimination under the Rehabilitation Act, a plaintiff must show that (1) he was disabled; (2) he was a qualified individual; and (3) he suffered an adverse employment action because of his disability. Moore v. J.B. Hunt Transport, Inc., 221 F.3d 944, 950 (7th Cir. 2000). We note here that while Moore was decided under the Americans with Disabilities Act ("ADA"), cases under both the Rehabilitation Act and ADA are normally mutual precedents. See Washington v. Indiana High Sch. Ath. Ass'n, 181 F.3d 840, 845 (7th Cir. 1999).

### a. Mundt's Status as a Qualified Individual

The USPS removed Mundt from the June 1999 ASP and prevented him from attending the customer service area of the January 2000 ASP because of his driving restriction. Mundt acknowledges that driving is a required part of the customer service training area of the ASP. However, he claims that based on his own testimony, the testimony of a former classmate (and current USPS supervisor), and testimony of another USPS employee, driving was not always required to complete the course, and more importantly, driving is not an essential portion of the job of Customer Service Supervisor. Thus, Mundt argues, his request for a reasonable accommodation, to be excused from the driving portion of the class, should have been granted since the USPS did not always require either customer service trainees or full-fledged supervisors to drive.

The evidence upon which this assertion is based is troublesome for several reasons. Plaintiff's counsel obtained the affidavits of Michael Taylor (a USPS supervisor) and Stephen Brown (a USPS employee) in violation of Local Rule 83.54.2 (formerly Rule 4.2) of the Rules of Professional Conduct for the Northern District of Illinois. The rule states, in relevant part: "During the course of representing a client a lawyer shall not communicate . . . on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party...." See Weibrecht v. Southern Illinois Transfer, Inc., 241 F.3d 875, 881-82 (7th Cir. 2001).

Mundt's counsel was aware at the time that he solicited the affidavits in question that the defendant USPS was represented by counsel.

In Weibrecht, the Seventh Circuit upheld the District Court's adoption of a three-part test, set out in the American Bar Association's official commentary to the Model Rules of Professional Conduct, to determine whether an employee is to be considered represented. See ABA Model Rules of Professional Conduct Rule 4.2 cmt. 4 (1995). Under that test, a defendant's employee is regarded as being represented by the defendant's lawyer if any of three conditions are met: (1) the employee has "managerial responsibility" in the defendant's organization, (2) the employee's acts or omissions can be imputed to the organization for purposes of liability, or (3) the employee's statements constitute an admission. Weibrecht, 241 F.3d at 881. In Taylor's case, the contact is barred because Taylor is a supervisor for the USPS; regarding both Taylor and Brown's testimony, their affidavits could theoretically constitute admissions on the part of the USPS as to the requirements of Customer Service Supervisors. See In re Air Crash Disaster near Roselawn, 909 F. Supp. 1116, 1121 (N.D. Ill. 1995) ("virtually every employee may make admissions binding on his or her employer"). Therefore, Mundt is barred from relying on the affidavits of both Michael Taylor and Stephen Brown.

In addition, even if the Taylor and Brown affidavits were admissible, they do not generate a genuine issue of material fact that would preclude summary judgment. Taylor, in a subsequent affidavit, admitted that he did have to drive in order to

complete his 1999 ASP training and that driving is an essential function of the Customer Service Supervisor position. Brown offers nothing in his affidavit of a foundational nature to show that he was in a position at his facility to observe Customer Service Supervisors at work; for instance, he does not state what time he works or in what area.

Mundt also offers his own affidavit to show that driving was not an essential function of the job of Customer Service Supervisor. However, in deposition testimony Mundt said that he eventually would "probably have to do some driving out on the street to be able to supervise letter carriers." The Seventh Circuit has repeatedly refused to allow subsequent affidavits of a party to be used to "patch up" his own prior deposition testimony. Russell v. Acme-Evans Co., 51 F.3d 64, 67 (7th Cir. 1995); accord Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001)(holding that self-serving affidavits, if not supported by the record, will not preclude summary judgment).

The USPS views driving as an essential function of the position of Customer Service Supervisor. It does not distinguish, as Mundt does, between supervisors who oversee the processing of mail and those who supervise letter carriers. According to the USPS, there is no such position as "mail processing supervisor." Customer Service Supervisors may be called upon to perform a wide range of tasks, which may include delivering late mail to letter carriers on the street and responding to traffic collisions.

The duties vary and are subject to the needs of the local post office as determined by the postmaster.

An employer's judgments as to which functions are essential is a primary form of evidence of whether a particular function is essential or not. Basith v. Cook County, 241 F.3d 919, 927-28 (7th Cir. 2001). Although courts will inquire whether an employer actually requires all employees in a particular position to perform functions claimed to be essential, the Seventh Circuit has held that courts will not second-guess the employer's judgment in determining which elements are essential. Id. Applying these principles to the instant case, Mundt has failed to show that there is any genuine issue of material fact as to the requirements of a Customer Service Supervisor. For example, it is uncontroverted that the second half of the training program included training in street supervision, which necessarily requires that a trainee be able to drive.

Finally, Mundt argues that the determination by the USPS that he needed to be seizure-free for one year before driving at work is contradicted by Mundt's own physician, who stated that Mundt could drive after December 25, 1999. Thus Mundt alleges that his inability to register for the January 2000 ASP in the Customer Service area was discriminatory, since his own physician had cleared him to drive before the date Dr. Patel had specified.

We disagree with Mundt's contention that the USPS was bound to the date specified by his physician. An employer is entitled to rely on the medical determinations made by its own medical professionals so long as the reliance is

reasonable and in good faith. Bay v. Cassens Transport Co., 212 F.3d 969, 974-75 (7th Cir. 2000). There is no evidence that the USPS relied on Dr. Patel's findings in anything other than good faith. Furthermore, epilepsy has been found to increase the likelihood of traffic accidents. Cf. Costner v. United States, 720 F.2d 539, 542 (8th Cir. 1983) (referring to studies showing that persons with epilepsy have higher automobile accident rates than persons without epilepsy). In addition, a person is permanently disqualified from driving a commercial motor vehicle if that person is epileptic. 49 C.F.R. § 391.41(b)(8). Therefore, it is not unreasonable for the USPS to require Mundt to be seizure-free for one year before allowing him to drive as part of the ASP. Mundt seeks to controvert this assessment by highlighting the fact that, unlike Mundt's physician, Dr. Patel is not a neurologist; yet Mundt does not offer any evidence other than his physician's determination that he could drive after December 25, 1999 to show that the USPS's finding was unreasonable. A difference of opinion between two physicians does not automatically make one or the other unreasonable as a matter of law. Bay, 212 F.3d at 974-75. This is especially true given the fact that the USPS has a strong interest in assuring that all of its employees who drive are medically fit to drive. We therefore conclude that Mundt has failed to show that he is a qualified individual for purposes of the Rehabilitation Act.

**b. Adverse Employment Action**

To survive a motion for summary judgment, Mundt must exhibit evidence sufficient to show that a genuine issue of material fact exists as to all of the elements

of his claim of discrimination. See Matsushita, 475 U.S. at 587. He must show 1) that he is disabled; 2) that he is a qualified individual; and 3) that he suffered an adverse employment action because of his disability. Moore, 221 F.3d at 950. Because he has not satisfied the second and third elements of his claim, we do not reach the issue of whether or not he is disabled.

Mundt's two claims of discrimination also fail with regard to the requirement that he suffered an adverse employment action. To satisfy this requirement, an employee must suffer a materially adverse change in the terms and conditions of his employment, which must be "more disruptive than a mere inconvenience" or a change in job responsibilities. Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993). In Crady, the court went on to give examples of a materially adverse change in employment: termination, a demotion as demonstrated by a decrease in salary, a material loss of benefits, a less distinguished title, significantly lessened material responsibilities, or other indications unique to a particular situation. Id.

Mundt has failed to demonstrate any evidence showing that the USPS took an adverse action against him. Mundt claims that being removed from the June 1999 ASP was an adverse employment action; however, as the USPS correctly points out, Mundt was enrolled in a voluntary training program. Upon being removed from the ASP, Mundt returned to his prior position as Acting Supervisor at the Bulk Mail Center with no loss of salary or responsibilities; indeed, Mundt conceded in his deposition that his salary went up slightly after he returned to his prior job. Mundt was allowed to attend

the January 2000 ASP without being required to enroll again; he graduated from the Bulk Mail Center functional area and is now a certified supervisor. As such, he is eligible to apply for promotion to supervisory positions.

Nevertheless, Mundt contends that he is unwilling to apply for the next level of supervisory positions at the Bulk Mail Center (Level 16) because those positions would require him to change his schedule from 6:00 a.m.-2:30 p.m. to 2:30 p.m. to 11:00 p.m. This, according to Mundt, would work a hardship on him and his family because his wife currently works 5:00 a.m.-2:00 p.m., and that she would be required to do all of the household chores (cleaning, cooking and taking care of the children) that they currently share. Mundt overlooks the fact that he chooses not to apply for the Level 16 supervisory positions for personal reasons. The fact that Mundt has voluntarily chosen not to seek promotion because it would be inconvenient for him does not transform the conduct of the USPS into an adverse employment action.

A transfer to a position with the same salary and benefits but with different (but not diminished) responsibilities does not constitute an adverse employment action. See Crady, 993 F.2d at 136. Here, Mundt was given the option, which he accepted, of continuing his ASP training in a different functional area, but one with the same level of salary, benefits and material responsibilities. Being shifted to an essentially equivalent job that the employee does not like as much "does not a Title VII claim create." Place v. Abbott Laboratories, 215 F.3d 803, 810 (7th Cir. 2000). Mundt cannot now claim discrimination simply because he is faced with the decision of either

pursuing or rejecting a promotion that was not his first choice. See Bell v. E.P.A., 232 F.3d 546, 555 (7th Cir. 2000) ("not everything that makes an employee unhappy is an actionable adverse action").

For the reasons stated above, summary judgment is appropriate as to both Counts I and II. We therefore grant the USPS summary judgment as to Mundt's two claims of discrimination.

## III. Retaliation

The USPS also moves for summary judgment on Mundt's claim of retaliation based on his EEO activity. To establish a prima facie case of retaliation, Mundt must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. Johnson v. Nordstrom, 260 F.3d 727, 732 (7th Cir. 2001).

It is undisputed that Mundt engaged in statutorily protected expression. However, as discussed in section II, Mundt has failed to show that he suffered an adverse employment action. Therefore, Mundt fails to establish a prima facie case of retaliation.

Even assuming that Mundt suffered an adverse employment action, he offers no evidence of a causal link other than the two-month interval that passed between the first EEO complaint and his exclusion from the customer service area in January 2000. The Seventh Circuit has said that "suspicious timing does constitute circumstantial, or indirect, evidence" of retaliation. Hunt-Golliday v. Metropolitan Water Reclamation

- 15 -

District of Greater Chicago, 104 F.3d 1004, 1014 (7th Cir. 1997). A plaintiff complaining of retaliation need only establish that the protected expression and adverse action are not wholly unrelated in order to establish a causal link. Hunt-Golliday, 104 F.3d at 1014.

However, speculation based on suspicious timing alone does not support a reasonable inference of retaliation. Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000). Plaintiffs must produce facts that somehow tie the adverse action to the protected activity. Id. Although we acknowledge that Hunt-Golliday and Sauzek appear somewhat contradictory, we read them to hold that a plaintiff needs to show more than suspicious timing alone in order to establish a reasonable inference.

Here, Mundt relies only on the two-month gap between his EEO complaint and his prohibition from the customer service area of the January 2000 ASP to demonstrate a causal link. He fails to offer any other facts that would tie the USPS's actions to his EEO activity, such as disciplinary action or any "pattern of criticism or animosity" by supervisors following his initial filing. See Hunt-Golliday, 104 F.3d at 1014. Under Sauzek, without these kinds of connecting facts, Mundt cannot establish the required element of causation.

Even if Mundt could establish that he has a prima facie case of retaliation, the USPS has advanced a legitimate, non-discriminatory reason for the action it took. See Silk v. City of Chicago, 194 F.3d 788, 799 (7th Cir 1999). As noted in section I, the USPS prevented Mundt from participating in the customer service area of the January

2000 ASP because its medical professional determined that Mundt needed to be seizure-free for one year before he could be allowed to drive while on duty with the USPS. An employer is entitled to rely on such a medical determination. Bay, 212 F.3d at 974-75. Thus, the USPS has offered a legitimate, non-discriminatory reason for its actions.

Because the USPS has offered a legitimate, nondiscriminatory reason, Mundt can preserve his cause of action only by showing that the USPS's proferred reason was pretextual. See Contreras v. Suncast Corp., 237 F.3d 756, 765 (7th Cir. 2001). Other than the insufficient temporal proximity noted above, Mundt offers his removal from the June 1999 ASP, which occurred prior to the USPS receiving his doctor's note, as evidence of pretext. As the USPS correctly points out, this is irrelevant to Mundt's claim that he was retaliated against in January 2000. Mundt further claims that the USPS physician's determination that Mundt needed to be seizure-free for one year is evidence of pretext. Mundt has no other evidence to support this claim, and, as noted above, the USPS is entitled to rely on their physician's determinations. Bay, 212 F.3d at 974-75.

Because Mundt has failed to establish a prima facie case of retaliation, and because the USPS has provided a legitimate, non-discriminatory reason for its actions, which Mundt cannot show were pretextual, Mundt is unable to establish that he has a valid retaliation claim. Accordingly, we grant the motion of the USPS for summary judgment as to Mundt's claim of retaliation.

## Conclusion

For the reasons stated above, the USPS's motion for summary judgment is granted in its entirety.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   October 25, 2001